**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES R. MEEKER, d/b/a THE MEEKER VINEYARD,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN MEEKER, AHLGREN VINEYARD, PELICAN RANCH WINERY, SANTA CRUZ MOUNTAIN VINEYARD, SAVANNAH-CHANELLE VINEYARDS, and DOES 1 through 10, inclusive,<br><br>Defendants. | No. C 02-0741 JSW<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S OBJECTIONS TO EVIDENCE** |

Now before the Court is the motion of defendants Martin Meeker, Ahlgren Vineyard, Pelican Ranch Winery, Santa Cruz Mountain Vineyard, and Savannah-Chanelle Vineyards (collectively, "Defendants") for summary judgment, or in the alternative, for summary adjudication. Also before the Court is the cross-motion of plaintiff Charles R. Meeker d/b/a The Meeker Vineyard, ("Plaintiff") for summary judgment, or in the alternative, for partial summary judgment. Also before the Court is Plaintiff's objections to late-filed evidence and motion to strike Defendant's Food and Beverage Study filed in conjunction with their reply to their motion for summary judgment. Lastly, before the Court is Defendant's objections to evidence.

Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby DENIES Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment on the ground that there remain genuine issues

of material fact still in dispute. The Court hereby DENIES Plaintiff's motion to strike Defendant's Study and GRANTS IN PART and DENIES IN PART Defendants' objections to the evidence.

**BACKGROUND**

This is an action for trademark infringement brought by Plaintiff Charles R. Meeker on behalf of his winery located in Dry Creek Valley, Healdsburg, California, against defendant Martin Meeker who is in the business of growing wine grapes in San Miguel, Paso Robles, California. The dispute revolves around the parties' use of the same name, the Meeker Vineyard, in conjunction with their respective businesses. The complaint states claims for common law trademark infringement, violations of the Lanham Act, fraud in the registration of Defendant Meeker's mark and related unfair business practices under the California Business and Professions Code.

**ANALYSIS**

**A.    Legal Standard.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards*

*v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.      General Principles.**

Section 43(a) of the Lanham Act makes actionable the deceptive and misleading use in commerce of "any word, term, name, symbol, or device" on any goods or in connection with any goods. 15 U.S.C. § 1125(a). To state a claim for infringement under Section 43(a), a plaintiff must meet three basic elements: (1) distinctiveness; (2) nonfunctionality; and (3) likelihood of confusion.[1]

To be protected, a mark must be capable of distinguishing one's goods from the goods of others; in other words, the mark must be distinctive. *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998). Marks are classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Id.* Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood. *See id.* at 1047 n.8. Personal names are descriptive marks, entitled to protection so long as it acquires a recognized secondary meaning. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992); *E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F. Supp. 457, 462 (N.D. Cal. 1991). Descriptive marks are not inherently distinctive and so do not initially satisfy the distinctiveness element. However, descriptive marks can acquire distinctiveness if the public comes to associate the mark with a specific source. *Kendall-Jackson*, 150 F.3d at 1048. Acquired distinctiveness is referred to as secondary meaning which has been defined as "*association*, nothing more." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). The basic element of secondary meaning is the "mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Id.* (citations omitted).

---

[1] Defendants' contentions notwithstanding, registration is not a prerequisite for protection under Section 43(a). *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (noting that "§ 43(a) protects qualifying unregistered trademarks"); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000). However, courts look to the general principles qualifying a mark for registration under 15 U.S.C. § 1052 when determining whether an unregistered mark is protectable under § 43(a). *Kendall-Jackson*, 150 F.3d at 1047 n.7.

Factors considered in determining whether a secondary meaning has been achieved include: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive. *Blue Bell*, 778 F.2d at 1358.

A product feature is functional and cannot serve as a trademark if the product feature is essential to the use or purpose of the article or if it affects the cost or quality of the article. *Kendall-Jackson*, 150 F.3d at 1048. The parties do not dispute that the mark at issue is non-functional.

The last element to qualify as a protectable mark is the most important element of all. *See Two Pesos*, 505 U.S. at 780. Under the Lanham Act, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Id.* Likelihood of confusion exists when customers viewing the mark would probably assume that the product is associated with the course of a different product identified by a similar mark. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987). Evidence of actual confusion is persuasive proof that future confusion is likely. *Id.* The law clearly establishes that actual confusion is an indicium of secondary meaning. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 987 (9th Cir. 1996). Evidence that the defendant intentionally copied the plaintiff's mark is also persuasive proof of confusion and is entitled to great weight because a defendant is presumed to accomplish this purpose. *Fuddruckers*, 826 F.2d at 845.

The factors considered to determine whether there is likelihood of confusion include: (1) strength of the allegedly infringed mark, (2) proximity or relatedness of the goods, (3) similarity of the sight, sound, and meaning of the marks, (4) evidence of actual confusion, (5) degree to which the marketing channels converge, (6) type of the goods and degree of care consumers are likely to exercise in purchasing them, (7) intent of the defendant in selecting the allegedly infringing mark, and (8) likelihood that the parties will expand their product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The factors are intended to guide the court in assessing the basic question of likelihood of confusion. *Eclipse Assoc. Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990). The presence or absence of a particular factor does not necessarily drive the determination of likelihood of confusion. *E. & J. Gallo*, 967 F.2d at 1290-91.

"Whether confusion is likely is a factual determination woven into law." *Blue Bell*, 778 F.2d at 1356. Trial courts disfavor deciding trademark cases in summary judgment because the ultimate issue is so inherently factual. *Id.* at 1356 n.5. Additionally, the question of likelihood of confusion is routinely submitted for jury determination as a question of fact. *Id.*

### C. Cross Motions for Summary Judgment.

On the issue of trademark infringement, defendant Martin Meeker and the defendant wineries move for summary judgment on the basis that Plaintiff cannot establish secondary meaning or likelihood of confusion as a matter of law. On his cross-motion for summary judgment, Plaintiff Charles Meeker contends that he is entitled to judgment as a matter of law on his claims for trademark infringement under the Lanham Act.

#### 1. Defendants' Contentions Regarding Secondary Meaning are Unfounded.

First, Defendants contend that use of a personal surname is not protectable. However, while personal names used in trademarks are "not inherently distinctive, they are treated as strong marks upon a showing of secondary meaning." *E. & J. Gallo*, 967 F.2d at 1291. Therefore, the central dispute is not the use of the Meeker surname, but rather whether the use of the surname has acquired a secondary meaning.

Second, Defendants contend that as a matter of law Plaintiff cannot prevail because he has failed to conduct a market survey. (*See* Defendants' Motion at 13.) Although it is true that expert market surveys are considered the best evidence of secondary meaning, surveys are not the only means to demonstrate the acquisition of secondary meaning. *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) ("survey evidence is only one of the most persuasive ways to prove secondary meaning, and not a requirement for such proof.")

Third, Defendants contend that there can be no likelihood of confusion as a matter of law because the analysis applies only to related goods, and Plaintiff is a winery that sells wines to retailers and consumers, while Defendant Meeker is a grape grower, who sells grapes to wineries. (*See* Defendants' Motion at 10.) Related goods are those goods which, though not identical, are related in the minds of consumers. *In Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 152-53 (9th Cir. 1963). Wines and wine grapes are complementary items, brought to the market through the same channels

5

of trade, advertised in similar media, and the final products compete directly and are used by the same consumers. The parties' products are therefore sufficiently related for purposes of trademark analysis.

### 2. Secondary Meaning.

Factors considered in determining whether a secondary meaning has been achieved include: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive. *Blue Bell*, 778 F.2d at 1358.

#### a. Actual Association.

In his cross-motion for summary judgment, Plaintiff contends that wine is a product for which the identity of the maker is of paramount importance to the buying public primarily because the quality of the product is viewed as flowing from the maker rather the varietal. (Cross-Motion at 16, citing *Gallo Nero*, 782 F. Supp. at 465.) However, without reference to any independent evidence, Plaintiff then asserts that the demand for his wine has increased steadily and his product enjoys substantial goodwill in the industry. (Cross-Motion at 17.) Plaintiff has failed to demonstrate that, as a matter of law, the general public associates the name of his vineyard with his distinctive wines.[2]

#### b. Degree and Manner of Advertising.

Plaintiff contends that he has engaged in a wide array of promotional events and advertising in targeted consumer and general publications. In addition, Plaintiff lists and attaches as evidence a number of reviews and accolades from wine periodicals and newspapers. (Cross-Motion at 17; Declaration of Charles Meeker ("C. Meeker Decl."), ¶¶ 9-14, Exh. B.) In addition, Plaintiff attaches his own declaration which states that in order to gain public recognition, Plaintiff has "depended first on wine quality and the resulting 'word-of-mouth' advertising, and secondarily on various promotional efforts," and has also engaged in promotional events and advertising. (C. Meeker Decl. ¶¶ 16-17, Exh. D.)

In examining whether a plaintiff's advertising efforts are sufficient to establish secondary meaning, the Court must "look at the advertising's amount, nature and geographical scope with an eye towards how

---

[2] The Court will address *infra* in further detail elements of association in the analysis of whether there exists a substantial likelihood of confusion.

6

likely the advertising is to expose a large number of the relevant consuming public to the use of the symbol as a trademark or trade name." *Japan Telecom v. Japan Telecom America*, 287 F.3d 866, 875 (9th Cir. 2002). "A large expenditure of money does not in itself create legally protectable rights. The test of secondary meaning is the effectiveness of the effort to create it." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987).

Plaintiff provides merely a sample of his efforts to advertise. (C. Meeker Decl., ¶¶ 16-18, 40-45, 48-56, Exh. D.)[3] Plaintiff further contends that because wine is a specialized market in which consumers rely on the maker and the maker's reputation, his efforts to "create positive word of mouth, engender good reviews, win awards, and build national exposure and a reputation for making a distinctive style of wine" is sufficient to establish the effectiveness of his advertising and promotional efforts. (Cross-Motion Reply Br. at 8.) Defendants' contention that Plaintiff has failed to establish undisputed facts concerning the extent and efficacy of his advertising and promotional efforts is persuasive. The Court cannot determine as a matter of law that Plaintiff's efforts are sufficiently effective so as to make the necessary finding of secondary meaning as a matter of law.

### c. Length, Exclusivity and Manner of Use of Trademark.

Plaintiff contends that he has used the Meeker Vineyards mark exclusively throughout the wine industry for at least twenty years, from the first release of Plaintiff's 1984 vintage until the current time. (Cross-Motion at 17; C. Meeker Decl., ¶¶ 2, 4, 6.) Defendants contend that Plaintiff has failed to provide evidence in support of secondary meaning because the analysis of whether secondary meaning attaches after a period of use depends on how, and not on how long, the plaintiff used his mark. (Cross-Motion Opp. at 15.) Although this factor does not independently establish the existence of secondary meaning, the Court does find that Plaintiff has proffered sufficient evidence to establish that his use of the Meeker Vineyards mark was exclusive for a period of time prior to Defendant Meeker's use of the same mark.

---

[3] Defendants move to strike portions of Charles Meeker's declaration for lack of foundation. Defendants contend that the paragraphs concerning what the winery, as opposed to Charles Meeker as an individual, has done with regard to sending out promotional letters should be stricken. (Objections to Evidence at 3, citing *Japan Telecom*, 287 F.3d at 873-74.) However, because Plaintiff is a sole proprietor and has personal knowledge of the promotional letters that he was responsible for sending out, the Court finds that the subject paragraphs relating to Plaintiff's promotional efforts on behalf of his winery are admissible and DENIES those portions of Defendants' objections concerning Plaintiff's promotional and advertising efforts.

However, because Plaintiff has failed to demonstrate the requisite manner in which the mark has been used, and this factor therefore does not militate in favor of either party.

### 3. Likelihood of Customer Confusion.

The core element of trademark infringement is the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products. *Academy of Motion Picture Arts and Sciences v. Creative House Promotions*, 944 F.2d 1446, 1454 (9th Cir. 1991). Likelihood of confusion is a mixed question of law and fact that is predominantly factual in nature. *E. & J. Gallo Winery*, 967 F.2d at 1290. The factors this Court must apply to determine the likelihood of confusion are enumerated in *Sleekcraft* and no single factor is singularly determinative. *Sleekcraft*, 599 F.2d at 348-49. The factors considered to determine whether there is likelihood of confusion include: (1) strength of the allegedly infringed mark, (2) proximity or relatedness of the goods, (3) similarity of the sight, sound, and meaning of the marks, (4) evidence of actual confusion, (5) degree to which the marketing channels converge, (6) type of the goods and degree of care consumers are likely to exercise in purchasing them, (7) intent of the defendant in selecting the allegedly infringing mark, and (8) likelihood that the parties will expand their product lines. *Sleekcraft*, 599 F.2d at 348-49.

#### a. Strength of the Mark.

Trademark law offers greater protection for marks that are stronger or more distinctive. While personal names used as trademarks are not inherently distinctive, they are treated as trademarks upon a showing of secondary meaning. *E. & J. Gallo Winery*, 967 F.2d at 1291. The parties dispute the strength of Plaintiff's mark. While Defendants wrongly contend that Plaintiff cannot maintain any trademark protection, Plaintiff has at this juncture failed to demonstrate definitively that his use of the mark is long and continued, that it enjoys widespread, national public recognition or that the winery has engaged extensive and expensive advertising and promotion of its products bearing the mark.

#### b. Proximity or Relatedness of Goods.

Where goods are related or complementary, the danger of consumer confusion is heightened. *Sleekcraft*, 599 F.2d at 350. Defendants contend that the parties' products are not related goods and do not directly compete because one sells wine to retailers and consumers, and one sells wine grapes to wineries. (Motion at 15.) However, as Defendants point out, the likelihood of confusion analysis applies

8

where "goods which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." (Motion at 10, citing *The Network Network v. CBS, Inc.*, 2000 U.S. Dist. LEXIS 4751 (C.D. Cal. 2000).) Plaintiff Meeker produces both grapes and wines; Defendant Meeker grows and harvests grapes and has also produced wine. The businesses are certainly related and, in the final tally, the result is a bottle of wine sold to the consuming public. There is a distinct possibility that a consumer might be confused as to the proper source of the contents of the final bottle of wine. Accordingly, this factor weighs in favor of Plaintiff Meeker.

### c. Similarity in Sight, Sound, and Meaning of Mark.

In analyzing the similarity of the marks, the Court must view the marks as a whole, as they appear in the marketplace. *E. & J. Gallo Winery*, 967 F.2d at 1291. The key elements of the marks are their sight, sounds, and meaning, and similarities in these characteristics "weigh more heavily than differences." *Sleekcraft*, 599 F.2d at 351.

Defendants contend that the marks are substantially dissimilar because Defendant Meeker's name is most often used in conjunction with the words "Paso Robles" and is always listed after the name of the vineyard using Defendant's grapes, the marks do not appear in the same magazine or articles and the design, style and color of the arrangement of the mark is different. (Motion at 14.) In addition, Defendant Meeker contends that there is no meaning of the mark itself, as it is only a surname and holds no independent meaning. (Opp. Br. at 20.) Plaintiff Meeker contends that the marks are identical and that in the context of wine labels, facially distinctive labels and the addition of other terms are insufficient to prevent confusion. (Opp. Br. at 11, citing *Gallo Nero*, 782 F. Supp. at 463-64.) Even where the subject marks are identical, "their similarity must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding the[ir] purchase." *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984).

The mark used by both parties is, in fact, identical. The meaning of the marks is identical: both indicate the production of wine (and/or wine grapes) from a particular vineyard owned by someone by the name of Meeker. However, it is still unclear, and certainly disputed between the parties, whether the mark, as encountered in the marketplace is confusingly similar in sight and sound. There is simply not enough evidence in the record to determine at this stage how the mark is encountered as a whole in the

marketplace. Therefore, although the meaning of the mark is indeed identical, the sight and sound of the mark is still disputed.

### d. Actual Confusion.

Evidence of actual confusion is relevant to the issue of likelihood of confusion, but the absence of such evidence does not necessarily create an inference that there is no likelihood of confusion. *Blue Bell*, 778 F.2d at 1360 n.10. "Evidence of actual confusion is strong evidence of likelihood of confusion, but it is not determinative." *Sleekcraft*, 599 F.2d at 1219. Questions regarding affiliation is inconclusive evidence of confusion. *Miss World, Ltd. v. Mrs. America Pageant, Inc.*, 856 F.2d 1445, 1451 (9th Cir. 1988).

Defendants contend that there is no evidence of actual confusion and the only de minimus confusion is a series of several e-mails related to Defendant Meeker's website, despite the fact that Defendant's site has a clear disclaimer that it is not related to Plaintiff's winery. (Motion at 17.) Plaintiff contends that there is evidence of misdirected mailings in the form of bills and invoices, misdirected e-mails, misdirected telephone calls, oral incidents of confusion, and confusion by website wine reviewers. (Opp. Br. at 16; Cross-Motion at 9, 21.) In his cross-motion for summary judgment, Plaintiff Meeker attaches evidence of apparent confusion as well as his own declaration to the effect that people had expressed their confusion regarding the relationship between the two Meeker Vineyards. (*See* C. Meeker Decl. ¶¶ 30-37, Exh. H.) The evidence attached to Plaintiff Meeker's declaration consists of three unknown persons indicating that they were apparently confused by the two wineries' websites, three misdirected invoices, a few notes from Plaintiff himself about other unknown person's apparent confusion, and a number of misdirected e-mails.

Defendants object and move to strike those portions of Plaintiff Meeker's declaration regarding alleged actual confusion on the basis that those paragraphs lack foundation and constitute inadmissible hearsay. (Objections to Evidence at 3.) Defendants contend that the declaration attempts to state what a third party said, without the third party declaring or confirming the truth of the matter asserted. Plaintiff responds by claiming that the content of the alleged hearsay statements are not introduced for the truth of the matter asserted, but rather are simply reiterations of questions posed directly to Plaintiff himself. (Opp. to Objections to Evidence at 3.) Plaintiff argues that questions cannot themselves be introduced for the truth of the matter asserted and are therefore not inadmissible hearsay. However, Plaintiff is introducing the statements of several unidentified persons for the purpose of proving the truth that each was confused by

10

the two vineyards' identical names. The use of this evidence, in this manner, constitutes inadmissible hearsay and is stricken. In addition, there is little foundation for the introduction of the alleged statements of unknown persons.[4] The central issue in this matter is whether or not potential consumers or members of the *public* are, or could potentially be, confused by the similarity of the marks in the same industry. Although the Court finds that Plaintiff Meeker may be able to demonstrate actual or potential confusion, the record in this case is insufficient to prove actual confusion as a matter of law. The issue remains one of disputed fact.

### e. Marketing Channels.

Defendant Meeker contends that he does not advertise to the public or to retailers and instead, that his business is targeted toward a small select group of winemakers. (Motion at 16.) Plaintiff Meeker contends that the California Association of Winegrape Growers, whose listing is proffered by Defendants as an exhibit to their motion, names both wineries in the same market. (Opp. Br. at 14.) Further, Plaintiff contends that both parties' use of the internet as a marketing channel greatly increases the likelihood of confusion because it allows competing marks to be encountered at the same time. (*Id.*, citing *Goto.com*, 202 F.3d at 1207.)

Defendants, on the other hand, argue that because defendant Martin Meeker does not advertise to the public or to retailers, the distribution methods for the two parties' products are different. (Motion at 16, citing M. Meeker Decl., ¶ 19.) Defendants therefore summarly contend that it is undisputed that the marketing channels do not merge.

There is certainly a dispute over whether the two Meeker Vineyards advertise in overlapping marketing channels. Because the Court finds that the products are sufficiently similar to be considered related goods for purposes of an infringement analysis, the Court also can appreciate that there is a significant possibility that the two parties market through similar channels. The factor is certainly material

---

[4] Even if Plaintiff had introduced affidavits of some of the persons identified in his declaration (for instance, the potential wine distributor in paragraph 32 of Charles Meeker's Declaration), such evidence carries de minimus evidentiary weight in determining whether a trademark has acquired secondary meaning, and cannot defeat a defendant's motion for summary judgment. *See, e.g., Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) (holding that declarations from interested parties, such as plaintiff's employees and wholesalers, have little probative value regarding the assessment of consumer perception because they are not impartial and do not necessarily reflect the views of the purchasing public).

11

and is still in dispute. Therefore, the Court does not find the factor weighs in either party's favor, but rather that the disputed evidence should properly be considered by the finder of fact.

### f. Types of Goods and Degree of Consumer Care.

When goods are expensive, it can be assumed that buyers will exercise greater care in selecting their purchases. *Sleekcraft*, 599 F.2d at 353. It is also established that "[s]imilar trademarks are more likely to result in confusion when the products at issue are of relatively low cost, where buying decisions are made quickly and without extensive study, and where certain consumers are not sophisticated." *E. & J. Gallo Winery v. Pasatiempos Gallo*, 905 F. Supp. 1403, 1413 (E.D. Cal. 1994). In addition, "wine is a product whose quality is accepted by many simply on faith in the maker. They can perhaps identify the vintner better than the wine." *Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 733 (2d Cir. 1978). Plaintiff contends that in the labels submitted by defendants, the Meeker Vineyard mark appears on the bottle, without explanatory phrasing. (Opp. Br. at 15, citing M. Meeker Decl., Exh. B; Cross-Motion at 22.) Defendants contend that the only time the parties' businesses met in the marketplace are the few instances in which the defendant wineries have added the defendant 'Meeker Vineyards' mark to the back label of the wine or in small letters on the front label to state where the grapes used for that particular wine were grown. (Motion at 17.) Whether an educated and sophisticated wine consumer or a casual purchaser of wine would recognize the difference between the parties' products is uncertain.

This factor is material and still remains in dispute. It is not altogether clear from the evidentiary submissions made by both parties the exact cost of the competing wines in the market. The range of prices for the various varietals and years differs and, without having been provided a market context in which the prices of wines are situated, it is difficult to assess the degree of consumer care exercised in the purchase of these products. Again, the Court does not find the factor weighs in either party's favor, but rather that the disputed evidence should properly be considered by the finder of fact.

### g. Intent of Defendant in Selecting Infringing Mark.

A party claiming trademark infringement need not demonstrate that the alleged infringer intended to deceive consumers. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157-58 (9th Cir. 1963). However, when the alleged infringer knowingly adopts a mark similar to another's, the Court can presume that he intended to deceive the public. *Sleekcraft*, 599 F.2d at 254. Evidence of "deliberate

copying is relevant to a determination of secondary meaning. Indeed, under appropriate circumstances, deliberate copying may suffice to support an inference of secondary meaning." *Fuddruckers*, 826 F.2d at 844. "[Plaintiff] would have us go further, and hold that evidence of deliberate copying shifts the burden of proof on the issue of secondary meaning. We decline to so hold." *Id.*

In this matter, Plaintiff contends that when Defendant Martin Meeker discovered that Plaintiff, with whom he shares a common surname, established a successful winery, he subsequently decided to adopt the same name by using the same mark in the same industry. Thus, Plaintiff argues, Defendant Meeker's knowing adoption of the mark constitutes bad faith. (Opp. Br. at 16.) Defendant, however, asserts that he had no improper intent in its selection of the mark and only chose the mark to identify the products by use of his own surname as he had done with his own past businesses. (Motion at 19, citing M. Meeker Decl., ¶¶ 5-6.)

Again, this factor is in material dispute. It is not clear what motivated Martin Meeker to chose to use his own surname to identify a related product. The Court does not find the factor weighs in either party's favor, but rather that the disputed evidence should properly be considered by the finder of fact.

### h. Expansion of Product Lines.

A strong possibility of expansion into competing markets weighs in favor of a finding of infringement. *Sleekcraft*, 599 F.2d at 354. Here, however, the Court has found that the products, wine grapes and wines, produced by both parties, already compete in the market. The parties do not contest the further application of this factor and the Court finds that it does not weigh significantly in either party's favor.

## D. Remaining Related Claims.

The standard for Lanham Act trademark infringement claims is "substantially congruent" to the standard for Lanham Act unfair competition and the California state law claims for trademark infringement and unfair competition claims under California Business and Professions Code Section 17200. *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 975 n.90 (C.D. Cal. 2002); *Entrepreneur Media, Inc. v. Smith* 279 F.3d 1135, 1153 (9th Cir. 2002). Because the Court has determined that there is a genuine issue of material fact regarding secondary meaning and likelihood of confusion, neither party is entitled to summary judgment on the related claims.

In addition, because the Court does not make any finding as a matter of law on Defendants' intent in adopting the mark, the Court DENIES Defendants' motion for summary judgment with regard to the fourth claim for cancellation of trademark due to fraud.

### E.   Liability of Defendant Wineries.

The co-defendant wineries argue that they should be dismissed from this suit on alternative grounds. In particular, the wineries contend that the Fair Use Doctrine and the First Sale Doctrine bar their liability here.

#### 1.   Fair Use Doctrine.

The Fair Use Doctrine refers to use "otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1159(b)(4). To prevail on their fair use defense, the co-defendant wineries need to demonstrate that: (1) the mark, 'Meeker Vineyards,' was used in a non-trademark use; (2) the phrase is merely descriptive of their goods or services; and (3) they used the phrase "fairly and in good faith" only to describe their goods or services. *See id.* Use "otherwise than as a mark" means a use that is not meant "to identify the source of the goods," i.e., that it is not used as a trademark, as defined in 15 U.S.C. Section 1127.

Here, the co-defendant wineries contend that they were simply complying with a contract term with Defendant Martin Meeker requiring the addition of his name and source of the grapes to the wine label, as well as citing the appellation or geographical source of the grapes used in their wine, as is custom in the industry.

Using the name 'Meeker Vineyards' to designate the producer of the grapes and the source of the grapes used is the very essence of use as a mark. Intent to confuse is not a necessary element of the violation, but rather to establish a trademark infringement or an unfair competition claim under the Lanham Act, Plaintiff must only establish that defendants are using a mark confusingly similar to Plaintiff's valid, protectable trademark. *See Brookfield Communications v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999). Therefore, the fair use defense is, at this time, without merit.

## 2. First Sale Doctrine.

The defendant wineries contend that the First Sale Doctrine bars any claim for damages against them. The First Sale Doctrine applies where a purchaser of an article bearing a producer's trademark decides to resell the article, unaltered and in its original packaging. *Summit Technology, Inc. v. High-Line Medical Instruments Co.*, 922 F. Supp. 299, 307 (C.D. Cal. 1996) (holding that "[o]nce a trademark owner sells his product, the buyer ordinarily may resell the product under the original mark without incurring any trademark liability.") "Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." *Sebastian Int'l, Inc. v. Longs Drugs Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). The reasoning behind this rule is that, once a first sale is made, the producer, having already received payment for the first sale of his product, may not prevent its resale by claiming trademark infringement. *Summit Technology*, 922 F. Supp. at 307; *see also Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 140 (1998).

Here, Plaintiff did not institute this suit to prevent the defendant wineries from reselling wine he produced and sold to them. Therefore, the First Sale Doctrine is inapposite and does not as a matter of law bar the wineries' potential liability.

## F. Plaintiff's Motion to Strike Defendants' Survey Evidence is Denied.

On reply to their motion for summary judgment, Defendants submitted for the first time their Food and Beverage Study, a survey of potential consumers with regard to their recognition of the Meeker name. First, Plaintiff objects to the introduction of Defendants' survey evidence because it was late-filed and on reply, thereby impeding Plaintiff's right to contest the evidence. Because the Court afforded both parties an additional two weeks to brief and extension of time to argue the issue of the admissibility of the new survey evidence, such objection to the lateness of the submission has been fully addressed.

Substantively, Plaintiff objects to the introduction of the survey evidence on three bases: (1) the survey is irrelevant, confusing and a waste of the Court's time; (2) the survey is improper because it fails to comport with validly scientific methods; and (3) there is no authority to support introduction of the survey by Defendants for the purpose of disproving, as opposed to establishing the existence of, secondary meaning.

15

With regard to the contention that the survey is irrelevant and confusing, such blanket objections go to the weight of the survey, not its admissibility. In addition, the Court was not persuaded, even taking into account the findings of the survey evidence, that Defendants were entitled to summary judgment on the issue of secondary meaning.

With regard to the contention that the methodology employed by Defendants' expert was invalid, the Court finds that these challenges, for instance to the scope of the interviewed population or the failure to thoroughly analyze the data gathered, are challenges that similarly go to the weight of the survey evidence and not its admissibility. *See, e.g., Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (holding that in trademark cases, surveys are admissible as long as they are conducted according to accepted principles and are relevant); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997) (stating that the holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-99 (1993), applies to all expert testimony, including survey evidence and is sufficiently reliable where it has been conducted according to accepted principles). Plaintiff has not demonstrated that the survey conducted by Defendants' expert failed to comport with generally-accepted survey principles. Plaintiff's primary objections are that the population surveyed was overly-inclusive and that the expert failed to draw reliable conclusions from the evidence gathered. Plaintiff's objections go to the weight of the evidence, not to its admissibility.

Third, Plaintiff contends that survey evidence is not admissible for the purpose of disproving the existence of secondary meaning, but only for the purpose of affirmatively establishing the existence of secondary meaning. However, in *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985), the Ninth Circuit favorably reviewed the district court's admission of a survey conducted to support a finding of no secondary meaning. It is clear that using survey evidence to disprove the existence of secondary meaning is permissible.

Although the Court DENIES Plaintiff's motion to strike Defendants' survey evidence, the Court did not find the evidence sufficiently persuasive to indicate a lack of secondary meaning as a matter of law.

Therefore, the survey evidence, and any arguments as to its weight, may be introduced at trial for final determination.[5]

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment on the ground that there remain genuine issues of material fact still in dispute. The Court also DENIES Plaintiffs motion to strike Defendant's Food and Beverage Study and GRANTS IN PART and DENIES IN PART Defendants' objections to the evidence.

**IT IS SO ORDERED.**

Dated: July 6, 2004

/s/ Jeffrey S. White
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff will not be precluded from moving *in limine* on some other ground that the survey evidence should not be presented to the jury.